**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ROBERT SNYDER,**     **CASE NO. 2:06-cv-348**
                      **CRIM. NO. 2:05-cr-60**
    **Petitioner,**     **JUDGE MARBLEY**
                      **MAGISTRATE JUDGE KING**
**v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant motion, respondent's return of writ, petitioner's response and addendum to the motion, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's underlying criminal conviction arises from his June 6, 2005, guilty plea pursuant to the terms of a plea agreement and while represented by counsel to conspiracy to distribute over 50 grams of cocaine base, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(A)(iii), and 846. Doc. No. 56. On September 6, 2005, petitioner was sentenced to 120 months incarceration plus five years supervised release. Doc. Nos. 66, 70. Petitioner never filed an appeal. On May 11, 2006, he filed the instant *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. He asserts that he was denied the effective assistance of counsel because his attorney failed to file a motion for downward departure from petitioner's recommended sentence under the United States Sentencing Guidelines based upon petitioner's minor role in the offense, and failed to file a motion for downward departure based upon the sentencing disparity between crack and powder cocaine.

Petitioner asserts that his attorney acted with a conflict of interest because defense counsel stated that he had worked with the prosecutor and that they were friends. *See Brief in Support of 2255 Petition.* Petitioner also asserts that he "was led to believe" that he would be sentenced below the mandatory minimum if he cooperated with the government. *Addendum to §2255 Motion*, Doc. No. 143. He requests that the Court reduce his sentence below the mandatory minimum based upon his substantial assistance to the government, and pursuant to what he contends were the terms of his guilty plea. *See id.* Finally, petitioner asserts that his case is one of special and unusual circumstances warranting a sentence reduction. *See Supplemental Brief to §2255 Motion*, Doc. No. 121. In support of this allegation, petitioner has attached a letter from Dr. Doug Lemon indicating that petitioner has been attending AA and NA meetings regularly for several months, and has completed the prison's drug abuse education program, a 12 step study group, and a six week fitness program. *See Exhibits to Supplemental Brief*.

It is the position of the respondent that petitioner's claims are without merit and that this action must be dismissed.

## I. MERITS

Petitioner's claim that he is entitled to a reduction in his sentence because of the alleged special and unusual circumstances of this case fails to raise an issue justifying federal habeas corpus relief. To obtain relief under §2255, a prisoner must establish that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose [his] sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v.*

*Powell*, 428 U.S. 465, 477 n. 10 (1976).

> To prevail on a §2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Watson v. United States,* 165 F.3d 486, 488 (6th Cir.1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).
>
> To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990)) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); *accord Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996).

*McNeil v. United States*, 72 F.Supp.2d 801, 803 (N.D. Ohio 1999). Petitioner cannot meet this burden here.

> [N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver. Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside of the normal appellate system. Hence, when a federal statute, but not the Constitution, is the basis for postconviction attack, collateral relief from a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process. *Reed*, 512 U.S. at ----, 114 S.Ct. at 2300.
>
> Accordingly, nonconstitutional errors ordinarily are not cognizable on collateral review. Defendants must assert their claims in the ordinary course of trial and direct appeal. If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under §2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what really is

3

> being asserted is a violation of due process. Thus, as a practical matter, collateral relief does exist to vindicate rights of constitutional import that may lurk beneath otherwise garden-variety issues of statutory rights or guideline calculations.

*Grant v. United States, supra,* 72 F.3d at 506. Further, petitioner's sentence of 120 months incarceration is the mandatory minimum term of incarceration required for his offense of conviction under 21 U.S.C. §841(b)(1)(A)(ii). Contrary to the argument of petitioner, *see Response to Return of Writ*, Doc. No. 126, the District Court was not authorized to impose a sentence below the statutory minimum term in this case, where the government did not make that request pursuant to 18 U.S.C. §3553(e). *See Melendez v. United States*, 518 U.S. 120 (1996); *United States v. Burke*, 237 F.3d 741, 743-44 (6th Cir. 2001). Petitioner's claim that he was denied the effective assistance of counsel due to his attorney's failure to request a downward departure of petitioner's recommended sentence due to his minor role in the offense under 18 U.S.C. §3B1.2(b), or due to the sentencing disparity in crack and powder cocaine, *see United States v. Clay*, 2005 WL 1076243 (E.D. Tenn. May 6, 2005)(imposing sentence below the recommended guideline range due to the disparity in punishment for offenses involving crack and powder cocaine), *disagreed with by United States v. Doe,* 412 F.Supp.2d 87 (D.D.C. January 26, 2006), therefore fails. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). The two part test announced in *Strickland v. Washington*, 466 U.S. at 687, applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel

4

ineffectiveness must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

Petitioner signed a plea agreement indicating that he understood that the minimum penalty was ten years imprisonment. The plea agreement indicates:

> The Defendant is... aware that any estimate of a probable sentencing range that the Defendant may have received, or may receive in the future, from his counsel, the United States, or the probation office is a prediction, not a promise, and is not binding on the United States, the Probation Department or the Court. The United States makes no promise or representation concerning the sentence that the Defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence.
>
> \*\*\*
>
> [T]he United States Attorney may move the court pursuant to 18 U.S.C. §3553(e) and/or §5K1.1 of the Federal Sentencing Guidelines for an appropriate departure from the otherwise applicable guideline range for Defendant's sentence and will in connection therewith make known to the Court the nature and extent of Defendant's assistance. Defendant understands that whether such motion should be made lies within the discretion of the United States Attorney and that whether and to what extent such motion should be granted are solely matters for determination by the Court.
>
> No additional promises, agreements, or conditions have been made relative to this matter other than those expressly set forth herein, and none will be made unless in writing and signed by all parties.

Doc. No. 47. At the time of his guilty plea, petitioner stated that he had discussed the charges and

5

any possible defenses with his attorney. *Transcript*, June 6, 2005, at 5-6; 15. He was satisfied with his attorney's advice and representation. *Id*., at 15. The District Court advised him of all of the rights that he was waiving by pleading guilty. *Id.*, at 20-21. The prosecutor summarized the terms of petitioner's guilty plea as including a minimum term of imprisonment of ten years. The prosecutor further stated:

> Defendant is aware that the Court has jurisdiction to impose any sentence within the statutory maximum set forth for the offense to which the defendant pleads guilty. The defendant is aware the Court has yet to determine a sentence.
>
> \*\*\*
>
> [I]t is agreed that if the defendant provides substantial assistance in the investigation and prosecution of others, the United States may file a motion for a downward departure. Defendant understands that whether a motion is filed lies within the discretion of the United States, and whether and to what extent the motion should be granted are solely matters for determination by the Court.
>
> There are no additional promises made pursuant to this plea agreement.

*Id.*, at 24. Petitioner agreed with the prosecutor's statement regarding the terms of his plea agreement. *Id*., at 26-27.

> COURT: Aside from the plea agreement that we have just discussed, has any person, including an agent or officer of the government, or any of the attorneys in this case promised or even suggested that you will receive a lighter sentence or some other form of leniency in return for your plea of guilty?
>
> \*\*\*
>
> SNYDER: No, your Honor.

*Id*., at 27-28. The attorney for the government summarized the facts against petitioner as follows:

> [O]n May 17 of 2004, the confidential informant... indicated that Mr.

6

Snyder offered to sell crack cocaine.

On May 17, 2004, the confidential informant advised that Snyder told him that he can arrange to purchase one ounce of crack cocaine for $950. On that same day at approximately 5:00 p.m., Mr. Snyder arrived at the confidential informant's residence accompanied with another individual later identified as Michael Shawn Detty. Detty placed a bag of suspected crack cocaine on the table and Agent Ozbolt went out to the truck to retrieve his additional scales.

Agent Ozbolt weighed out the baggie of crack cocaine on the digital scales to 24 grams of crack cocaine. Detty said that he would charge only $925 instead of $950 and he... added a gram to the baggie.

After Agent Ozbolt observed him pull out a half ounce chunk of crack from his right sock, he cut the additional amount from this chunk. Detty acknowledged that... his uncle Robert Snyder called him about serving this ounce of crack cocaine.

On May 20 of 2004 at the direction of ATF Special Agent Ozbolt the confidential informant met with Robert Snyder, the confidential informant told Snyder that Agent Ozbolt would now want to buy another ounce of crack cocaine which was later changed to only a half ounce of crack cocaine.

Snyder indicated that he would talk to his nephew, Mr. Detty, to arrange this transaction. At approximately 2:20 p.m., Agent Ozbolt pulled up in front of a Days Inn and observed a young male... Snyder said that this individual was known to him as Dickie.

Both the CI and Snyder got out of the vehicle and Dickie got into the passenger front seat and met with Agent Ozbolt. Dickie handed Agent Ozbolt a baggie of suspected crack cocaine that Agent Ozbolt weighed out to be 12 grams of crack cocaine. Agent Ozbolt handed $500 in previously recorded government funds to Dickie. This Dickie was later identified as a Thomas Cain....

... [T]hroughout the period of the conspiracy involving Mr. Snyder, he sold crack cocaine as a broker an additional six times or seven times.... [T]hat is on November 7, June 7, June 8, June 17, June 23, September 22, September 24 and February 28, each time involving Mr. Cain, Mr. Foster and Mr. Detty. The total amount being 280 grams of crack cocaine on those occasions.

*Id*., at 29-31.  Defense counsel stated:

> MR. DURKIN: Your Honor, just so that it's a matter of clarification. As I have explained to my client, the fact that he did not actually make the sale is irrelevant to the conspiracy count.... [I]t's clear that he was the one who was able to bring together a willing buyer, the agent, and willing seller.
>
> COURT: He acted in furtherance of the conspiracy.
>
> MR. DURKIN: Absolutely.
>
> COURT: And the fact that a sale would be consummated was foreseeable.
>
> MR. DURKIN: Absolutely, your Honor.
>
> COURT: Hence, he is culpable under the conspiracy count.
>
> MR. DURKIN: No question about it and I have explained that to him. And I just wanted to make the record so that he is satisfied that is certainly the instrument or role he played.

*Id*., at 32-33.  Petitioner indicated that he understood.  He admitted he was guilty.  *Id*., at 33.  He never stated that he had any questions.  At his September 6, 2005, sentencing hearing, petitioner stated that he had reviewed the Presentence Investigation Report with his attorney.  *Sentencing Transcript*, at 3.  Defense counsel acknowledged that the Court did not have the authority to depart below the mandatory minimum term of ten years incarceration.  *Id*., at 12.  Petitioner indicated that he had no statement to make.  *Id*., at 13.  He was advised of his right to appeal, but stated that he did not want to appeal.  *Id.*, at 16.  In view of all of the foregoing, petitioner's allegation that he was led to believe that he would receive a sentence below the mandatory minimum term, or that the terms of his guilty plea require such a sentence, are not worthy of credit.

  Further, it does not appear from the record that the government would have been unable to prove the charges against petitioner.  Pursuant to the terms of his guilty plea, the government

dismissed fourteen charges against petitioner, thereby substantially reducing his sentence exposure. Moreover, the government did file a motion for a downward departure from petitioner's recommended guidelines sentence under 18 U.S.C.A. §5K1.1, Doc. No. 65, and petitioner consequently obtained a three-level reduction in his recommended guideline sentence,[1] resulting in a recommended sentencing range of 110 to 137 months, instead of 151-188 months. *See id.; Presentence Investigation Report*. As discussed, petitioner was sentenced to the minimum mandatory term of 120 months. Under these circumstances, it is unlikely that counsel would have advised petitioner against accepting the guilty plea.

Finally, petitioner's allegation that he was denied the effective assistance of counsel due to his attorney's alleged conflict in interest is plainly without merit. In order to establish that he was denied the effective assistance of counsel due to a conflict of interest, petitioner must show both that an actual conflict of interest existed, and that the conflict adversely affected the voluntary nature of petitioner's guilty plea. *See United States v. Rahal*, 191 F.3d 642, 645 (6th Cir.1999), *citing Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir.1987); *see also Stewart* v. *Wolfenbarger*, 468 F.3d 338, 350-51 (6th Cir. 2006)(citations omitted).

> Petitioner must point to
>
> "specific instances in the record to suggest an actual conflict or impairment of their interests." Appellants must make a factual showing of inconsistent interests and must show that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict

---

[1] The Court is without authority to impose a sentence below the statutory mandatory minimum, absent a request by the government pursuant to 18 U.S.C.A. §3553(e), or application of 3553(f), neither of which is applicable to this case. *United States v. Burke*, 237 F.3d 741, 743-44 (6th Cir. 2001).

9

> remained hypothetical." ... There is no violation where the conflict is "irrelevant or merely hypothetical;" there must be an "actual significant conflict." *Thomas,* 818 F.2d at 481 (quoting *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.1983) (emphases added)).

*United States v. Rahal, supra,* 191 F.3d at 645. Petitioner cannot meet this standard here. His allegations are without any support. The fact that his attorney had worked with this particular prosecutor in the past, or that they may have been friends, does not indicate that any conflict existed.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

April 5, 2007                                                                                          s/Norah McCann King

                                                               Norah McCann King
                                          United States Magistrate Judge